| | | | |
|---|---|---|---|
| Case No. | **EDCV 19-0100 JGB (SHKx)** | Date | April 23, 2019 |
| Title | *NDC Equities Downtown PS, LLC, et al. v. City of Palm Springs, et al.* | | |

| | |
|---|---|
| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) GRANTING-IN-PART Defendants' Motion to Dismiss (Dkt. No. 17); and (2) REMANDING the Case to Riverside County Superior Court

    Before the Court is Defendants' the City of Palm Springs ("the City"), James Zicaro, Ken Lyon, Gary Johns, Robert Moon, Geoff Kors, Chris Mills, J.R. Roberts, and Ginny Foat's ("Defendants") motion to dismiss Plaintiffs' first amended complaint. ("Motion," Dkt. No. 17.) After considering all papers filed in support of and in opposition to the Motions, as well as oral arguments made at the April 22, 2019 hearing, the Court GRANTS-IN-PART Defendants' Motion and REMANDS the case to Riverside County Superior Court.

## I. BACKGROUND

    On December 7, 2018, Plaintiffs NDC Equities Downtown PS, LLC ("NDC") and O & M HR, LLC ("O&M") filed a complaint against Defendants in the Superior Court of California, County of Riverside. ("Complaint," Dkt. No. 1-1.) Defendants removed the action to this Court on January 16, 2019. ("Notice of Removal," Dkt. No. 1.) On January 30, 2019 the City of Palm Springs moved to dismiss Plaintiffs' Complaint. (Dkt. No. 10.) On February 20, 2019, Plaintiffs filed their First Amended Complaint. ("FAC," Dkt. No. 15.) Because Plaintiffs filed an amended complaint as of right, the Court denied the motion to dismiss as moot on February 28, 2019. (Dkt. No. 16.) The FAC alleges the following causes of action: (1) inverse condemnation (NDC against the City); (2) violation of civil rights under 42 U.S.C. § 1983 (NDC and O&M against all Defendants); and (3) declaratory relief (O&M against the City). (See FAC.)

On March 17, 2019, Defendants filed this Motion. In support of the Motion, Defendants submitted the following exhibits:

- Exhibit 1: Palm Springs Zoning Code § 94.03.00 ("Exhibit 1," Dkt. No. 17-2); and
- Exhibit 2: Complaint from City of Palm Springs v. O&M HR, LLC, et al., PSC 1701804, Superior Court for the State of California for the County of Riverside ("Exhibit 2," Dkt. No. 17-3).

Defendants request judicial notice for Exhibits 1 and 2. ("RJN," Dkt. No. 18.)[1] Plaintiffs opposed the Motion on March 25, 2019. ("Opposition," Dkt. No. 21.)[2] Defendants replied on April 8, 2019. ("Reply," Dkt. No. 22.)

## II. FACTUAL ALLEGATIONS

Plaintiff alleges the following facts, which are assumed to be true for purposes of the Motions. In late December 2005, the City began negotiations with an affiliate of NDC and O&M to sell its Prairie Schooner Property ("the Property"). (FAC ¶ 12.) The affiliate intended to build a Hard Rock Hotel on the Property, but the project stalled during the recession. (Id.) Eventually negotiations resumed, but with O&M as the prospective purchaser. (Id. ¶ 13.) At that time, O&M owned two parcels of land next to the Property ("the Tahquitz Plaza Property"). (Id.) On June 1, 2011, with the approval of the City Council, the City and O&M memorialized a purchase agreement in which O&M would acquire the Property for $1.5 million. (Id. ¶ 14.) The purchase agreement acknowledged O&M's intent to build a "First Class Hotel."

---

[1] A court may take judicial notice of an adjudicative fact not subject to "reasonable dispute," either because it is "generally known within the territorial jurisdiction of the trial court," or it is capable of accurate and ready determination by resort to sources whose "accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Under Federal Rule of Evidence 201, "[a] court must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). "Municipal ordinances are proper subjects for judicial notice." Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist., 498 F.3d 1031, 1039 (9th Cir. 2007). Accordingly, judicial notice is proper for Exhibit 1, containing a provision of the Palm Springs Zoning Code. Proceedings of other courts, including orders and filings, are also the proper subject of judicial notice when directly related to the case. See United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992) (stating that courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.") Thus, judicial notice is also proper for Exhibit 2, which contains the complaint from the City's state court action against O&M. Accordingly, the Court GRANTS Defendants' RJN.

[2] Plaintiffs' Opposition does not comply with Local Rule 11-3.1.1, requiring 14-point font. The Court directs Plaintiffs to comply with the Local Rules in future filings, if any.

(Id. ¶ 16.) The purchase agreement also included a license for the City to use the Property as a public parking lot without charge until commencement of construction. (Id. ¶ 17.)

But on June 28, 2011, consummation of the transaction was forestalled again after California enacted the California Redevelopment Dissolution Act. (Id. ¶ 14.) On December 1, 2014, after the City confirmed it would be able to satisfy its obligations under the purchase agreement, O&M and its affiliate entered into a First Amended Purchase Agreement ("Amended Agreement"). (Id. ¶ 20.) In the Amended Agreement, O&M assigned to an affiliate its rights to purchase the property from the first purchase agreement. (Id.) The Amended Agreement expressly provided that the City knew the purchasers intended to pursue a mixed-use residential and commercial project, replacing the language from the original purchase agreement concerning a first-class hotel. (Id. ¶ 21.) On December 2, 2014, the parties substituted NDC in place of the affiliate as the buyer. (Id. ¶ 22.) The transaction closed on January 7, 2015, and the City transferred the Property to NDC for $1.5 million. (Id. ¶ 23.)

The transaction also included a license agreement which permitted the City to continue using the Property as a public parking lot until NDC's development project commenced. (Id. ¶¶ 26-27.) Prior to the closing of the sale of the Property, NDC applied for a mixed-use residential and commercial project containing approximately 74 residential units and 17 live-work lofts ("the Aberdeen Project"). (Id. ¶ 24.) The Aberdeen Project contemplated development on the Property and the Tahquitz Plaza Property, as O&M was intending to transfer the Tahquitz Plaza Property to NDC prior to commencing the Aberdeen Project. (Id.) Under the license agreement, NDC retained the right to terminate the license with 90 days' written notice of the anticipated commencement of construction on the Aberdeen Project, or such other project permitted. (Id. ¶ 28.) Anticipated commencement of construction means "the date NDC applies for a demotion permit and/or a grading permit and/or a building permit" for its project. (Id.) But termination is effective only if the permit is issued and work under the permit commences. (Id.)

On May 28, 2015, NDC and O&M applied to the City for a demolition permit for the parking lot on the Property and the four buildings on the Tahquitz Plaza Property. (Id. ¶ 29.) Plaintiffs allege that under the City's municipal code, the City has no discretion in granting such a permit and was required to issue the permit on May 25, 2018. (Id.) The City did not issue the permit, and the City Attorney instructed City staff not to issue the permit. (Id. ¶ 30.) On June 1, 2019, Defendant Zicaro, a City Building Official, informed Plaintiffs that the permit was ready to issue, but that an appeal had been filed with the City's Building Code Appeals Board, preventing the permit's immediate issue. (Id. ¶ 31.) However, the City did not receive this appeal until June 4, 2015—three days after the City told Plaintiffs an appeal had been filed. (Id. ¶ 32.) The Palm Springs Preservation Foundation ("Preservation Foundation") had filed the appeal. (Id. ¶ 32.) On September 23, 2015, the Building Code Appeals Board ultimately determined the appeal was meritless and did not justify withholding the demolition permit. (Id.) Plaintiffs contend that the City (through the City Attorney and Zicaro) facilitated this wrongful appeal because it did not want to lose its parking rights under the license agreement. (Id.)

Although the denial of the demolition permit was deemed improper, such determination was meaningless by September 2015. While the Preservation Foundation's appeal of the demolition permit was pending, it requested nomination of the buildings on the Tahquitz Plaza Property as Class 1 Historic under the Municipal Code. (Id. ¶ 33.) This nomination was fast tracked to the City Historic Board by Defendant Lyon, a City Associate Planner. (Id. ¶ 34.) On June 9, 2015, the City Historic Board accepted the nomination and stayed demolition of the buildings on the Tahquitz Plaza Property for 120 days. (Id.) The Chair of the Historic Board, Defendant Johns, was also a board member of the Preservation Foundation. (Id.) The City Historic Board extended the stay for an additional 60 days on September 8, 2015. (Id.) These delays threatened the economic viability of the Aberdeen Project. (Id. ¶ 35.) On November 30, 2015, O&M entered into a Memorandum of Understanding ("MOU") with the Preservation Foundation in which O&M agreed not to demolish the buildings on the Tahquitz Plaza Property, to support Class 1 Historic designation, and to refurbish and restore the buildings at its own expense. (Id.) O&M contends it entered this MOU because it was "forced to appease the City and the Preservation Foundation." (Id.) On December 2, 2015, the City Council (comprised of Defendants Moon, Foat, Kors, Mills, and Roberts) unanimously voted to designate the buildings on the Tahquitz Plaza Property as Class 1 Historic. (Id. ¶ 36.) Thus, NDC and O&M could not develop the Aberdeen Project as contemplated because it could no longer use the Tahquitz Plaza Property as they intended. (Id. ¶ 37.)

NDC started a new development plan—the Andreas Project. (Id. ¶ 38.) The Andreas Project was "a multi-phase, mixed-use residential and commercial project consisting of a restoration of the commercial Tahquitz Plaza Buildings and the construction of approximately 57 residential units on the Property." (Id.) City planners working with NDC on the Aberdeen Project application supported the application as well as the residential use component of the Aberdeen Project. (Id. ¶ 39.) They explained that their concerns as to the Aberdeen Project were limited to preserving the Tahquitz Plaza Buildings and eliminating the live-work component. (Id.) The Andreas Project incorporated changes to address these concerns. (Id.)

NDC submitted its application for the Andreas Project on August 17, 2016. (Id. ¶ 41.) It did not receive a hearing with the Architectural Committee until five months later, on January 17, 2017. (Id.) At the hearing, the Architectural Committee provided comments on the Andreas Project Application and requested that NDC submit a revised application. (Id. ¶ 42.) NDC submitted a revision which was scheduled for a February 21, 2017 hearing. (Id.) On the date of the scheduled hearing, NDC was informed that the Architectural Committee postponed the hearing. (Id.) The Architectural Committee required NDC to revise and resubmit its plans two additional times. (Id. ¶ 43.) At meetings on March 6 and March 20, 2017, the committee considered the Andreas Project and "provided comments and feedback that were strikingly inconsistent with the Architectural Committee's prior comments and feedback." (Id.) NDC was concerned the Architectural Committee would delay this process indefinitely and insisted that it issue a recommendation to the City Planning Commission. (Id.) The Architectural Committee unanimously recommended disapproval. (Id.)

NDC again revised its plans for the Andreas Project and submitted updated plans to City planning staff in April 2017. (Id. ¶ 44.) The revisions incorporated "essentially any and all specific modifications requested by the Architectural Committee, including reducing the number of residential units from 57 to 48." (Id.) Shortly thereafter, NDC received a letter from planning staff outlining outstanding items that needed to be addressed before it would continue processing NDC's applications. (Id.) One such outstanding item was a CEQA analysis the City had not yet completed. (Id.) NDC requested a place on the April 26, 2017 City Planning Commission Agenda. (Id. ¶ 45.) However, on April 20, 2017, an associate city planner demanded NDC resubmit an entirely new application for the Andreas Project, incorporating all changes made since the original application. (Id.) NDC complied, and the City accepted the revised application. (Id.) But the City scheduled the application for the May 23, 2017 Planning Commission hearing, rather than the April 26 hearing NDC requested. (Id.)

At the May 24, 2017 Planning Commission hearing, with little deliberation and no public opposition, the Planning Commissioners voted unanimously to deny the Andreas Project, citing new concern about residential use of the property. (Id. ¶ 46.) On July 5, 2017, the City Council hearing addressed the Andreas Project. (Id. ¶ 48.) There was no public opposition to the Andreas Project, but councilmembers Moon, Foat, Kors, Mills, and Roberts unanimously denied the Andreas Project. (Id.) The deliberations leading to this denial again focused on concerns about residential use even though the Amended Agreement acknowledged NDC's intent to develop a mixed-use project. (Id.) The councilmembers expressed their desire that the Property be used for a first-class hotel instead. (Id. ¶ 49.) NDC contends that the City already knew NDC had concluded that hotel use was not economically viable. (Id.) Furthermore, after designating the Tahquitz Plaza Buildings as historic, there was not enough frontage along the main road to develop a hotel on the Property. (Id.)

NDC alleges this conduct "establishes that the City does not intend to approve any economically viable development plans by NDC for the Property under any circumstances." (Id. ¶ 50.) NDC asserts the City refuses to allow development because approving any development "will permit NDC to terminate the License Agreement and, thus, the City's free parking rights thereunder for public use, which such continued rights the City considers vital to the profitability of the City's nearby Convention Center." (Id.)

### III. LEGAL STANDARD

**A. Federal Rule of Civil Procedure 12(b)(1)**

Under Federal Rule of Civil Procedure 12(b)(1), a party may seek dismissal of an action for lack of subject matter jurisdiction "either on the face of the pleadings or by presenting extrinsic evidence." Sierra v. Dep't of Family and Children Servs., 2016 WL 3751954, at *3 (C.D. Cal. Feb. 26, 2019) (quoting Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003)). Thus, a jurisdictional challenge can be either facial or factual. White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack, the moving party asserts the allegations in the complaint as insufficient on their face to invoke federal jurisdiction. Safe Air for Everyone v.

Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). In evaluating a facial attack, the court must accept the factual allegations in the plaintiff's complaint as true. Comm. for Immigrant Rights of Sonoma Cty. v. Cty. of Sonoma, 644 F. Supp. 2d 1177, 1189 (N.D. Cal. 2009).

"By contrast, in a factual attack, the moving party disputes the truth of allegations that, by themselves, would otherwise invoke federal jurisdiction." Safe Air for Everyone, 373 F.3d at 1039. In resolving a factual challenge, a court "need not presume the truthfulness of the plaintiff's allegations" and "may look beyond the complaint to matters of public record without having to conver the motion into one for summary judgment." White, 227 F.3d at 1242. "Where jurisdiction is intertwined with the merits, the Court must assume the truth of the allegations in the complaint . . . unless controverted by undisputed facts in the record." Warren, 328 F.3d ad 1139 (citing Roberts v. Carrothers, 812 F.2d 1173, 1177 (9th Cir. 1987)).

## B.  Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see Horosny v. Burlington Coat Factory, Inc., No. 15-05005, 2015 WL 12532178, at *3 (C.D. Cal. Oct. 26, 2015). When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint — as well as any reasonable inferences to be drawn from them — as true and construe them in the light most favorable to the non-moving party. See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing

party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

## IV. DISCUSSION

### A. Claim 3: Declaratory Relief (O&M against the City)

The City argues that O&M's claim for declaratory relief must be dismissed because it it should have been brought as a compulsory counter claim in the City's currently pending state law action City of Palm Springs v. O&M HR, LLC, et al., PSC 1701804. (Mot. at 23-24 (citing In re Crown Vantage, 421 F.3d 963, 973 n.7 (9th Cir. 2005); Cal. Civ. Proc. Code § 426.30).) O&M concedes that this claim should be brought as a cross-claim in the City's action and requests that the claim be dismissed without prejudice. (Opp'n at 25.) Accordingly, the Court GRANTS Defendants' Motion as to O&M's declaratory relief claim and dismisses this claim without prejudice.

### B. Claim 2: 42 U.S.C. § 1983 (NDC and O&M against all Defendants)

#### 1. Ripeness of NDC's Unconstitutional Taking Claim

Defendants assert NDC's unconstitutional taking claim must be dismissed as unripe because NDC has not yet availed itself of California's procedures for obtaining compensation for this injury. (Mot. at 13-14.) NDC acknowledges this claim is not ripe because its claim for inverse condemnation under California law has not yet been adjudicated. (Opp'n at 24.) Accordingly, the Court GRANTS Defendants' Motion as to NDC's unconstitutional taking claim.

#### 2. Statute of Limitations

Section 1983 does not enumerate its own statute of limitations. See Butler v. Nat'l Cmty. Renaissance of California, 766 F.3d 1191, 1198 (9th Cir. 2014). Accordingly, federal courts "'apply the forum state's statute of limitations for personal injury actions[.]'" Cantella v. Van De Kamp, 486 F.3d 1128, 1132 (9th Cir. 2007) (quoting Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004)). In California, the statute of limitations for personal injury claims is 2 years. Cal. Civ. P. Code § 335.1. Federal law, however, governs when a § 1983 claim accrues. Knox v. Davis, 260 F.3d 1009, 1013 (9th Cir. 2001). "Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." Maldonado v. Harris, 370 F.3d 945, 955 (9th Cir. 2004) (quoting Knox, 260 F.3d at 1013). This "discovery rule" requires a plaintiff to be diligent in discovering the critical facts of its case. Bibeau v. Pac. Nw. Research Found. Inc., 188 F.3d 1105, 1108 (9th Cir. 1999).

///
///
///

### a. O&M Claims

O&M's due process claims are rooted in Defendants' delay and failure to issue a demolition permit on May 28, 2015, designating the Tahquitz Plaza Buildings as Class 1 Historic, and delaying and denying the Andreas Project. (FAC ¶ 59.) This claim is time-barred as to O&M. O&M does not adequately allege an interest in development of the Property after the Tahquitz Plaza Buildings were classified as Class 1 Historic on December 2, 2015. The FAC contains no allegations for the Court to infer that O&M retained a property interest in NDC's development of the Property under the Andreas Project. After the City Council voted to designate the Tahquitz Plaza Buildings as Class 1 Historic, with O&M's support under the MOU, there is no mention of O&M or its interests beyond the renovations and refurbishments provided for in the MOU. (See FAC ¶¶ 38-50.) Plaintiffs' conclusory assertion that they "have a shared interest in the development and value of the Property . . . and the Andreas Project" (id. ¶ 3) is insufficient for the Court to infer that O&M retained an interest in the Property or the Andreas Project after its own Tahquitz Plaza Property was eliminated from development plans. Without further factual adornment, the Court cannot infer that O&M was harmed by any of Defendants' alleged conduct after December 2, 2015. Accordingly, the final actionable harm to O&M accrued—at the latest—on December 2, 2015. Plaintiffs did not file the Complaint in this action until December 7, 2018, over three years later and well beyond the limitations window. (See Complaint.)

However, O&M asserts its claim is not time-barred under the continuing violations doctrine or the discovery rule. First, the continuing violations doctrine applies when a plaintiff can show "a series of related acts, one or more of which falls within the limitations period, or the maintenance of a discriminatory system both before and during [that] period." Gutowsky v. Cty. of Placer, 108 F.3d 256, 259 (9th Cir. 1997) (quoting Green v. Los Angeles Cty. Superintendent of Schs., 883 F.2d 1472, 1480 (9th Cir. 1989)). Thus, a continuing violation may be established through "a series of related acts against one individual, or by a systematic policy or practice of discrimination." Id. However, this is not an action that concerns a discriminatory system. As such, O&M must state facts supporting a determination that the alleged wrongful actions are related closely enough to constitute a continuing violation and that one or more of these wrongful acts falls within the limitation period. DeGrassi v. City of Glendora, 207 F.3d 636, 645 (9th Cir. 2000). Here, O&M does not allege a series of related acts, one or more of which falls within the limitations period, as the Court has already determined O&M does not sufficiently allege interest in the Property or the Andreas Project after December 2, 2015.

O&M's discovery rule argument is also misplaced, as it focuses on when it became apparent to Plaintiff that Defendants intended to "indefinitely remain in possession of the Property[.]" (Opp'n at 20.) As alleged, granting O&M's demolition permit was non-discretionary, and the City was required to issue such permit on May 28, 2015. (FAC ¶ 29.) Additionally, O&M entered an MOU in which it agreed not to demolish the Tahquitz Plaza Buildings and to support their Class 1 Historic designation. (Id. ¶ 35.) The City Council unanimously approved the Class 1 Historic designation on December 2, 2015. (Id. ¶ 36.) Thus, it was known on December 2, 2015 that O&M would no longer be able to develop the Tahquitz

Plaza Property as anticipated under the Aberdeen Project. Defendants' motivations behind refusing to grant an allegedly non-discretionary permit do not change that O&M had reason to know its claim accrued on December 2, 2015.

Accordingly, O&M's § 1983 due process claims are time-barred because O&M does not allege any injury falling within the limitations period and the discovery rule does not apply to injuries connected to the denial of the demolition permit and historic status designation. The Court GRANTS Defendants' Motion as to O&M's due process claims under § 1983.

### b. NDC Claims

NDC's claims are time-barred insofar as NDC seeks recovery for the delay and denial of the demolition permit and Class 1 Historic designation of the Tahquitz Plaza Buildings. Like O&M, NDC argues the discovery rule and continuing violation doctrine make actionable its due process claims rooted in the delay and denial of the demolition permit and Class 1 Historic designation of the Tahquitz Plaza Buildings. (Opp'n at 19-20.)

For the same reasons discussed above, NDC's discovery rule arguments as to the delay and denial of the demolition permit and Class 1 Historic designation of the Tahquitz Plaza Buildings fail. The same is not true for the delay and denial of the Andreas Project, it was denied on July 5, 2017, which falls within the limitations period. (FAC ¶ 48.)

The Court also finds that NDC's continuing violation argument fails insofar as NDC seeks recovery for actions concerning the Tahquitz Plaza Property. Although connected to the delay and denial of the Andreas Project, which occurred within the limitations period, the delay and denial of the demolition permit and the Class 1 Historic designation of the Tahquitz Plaza Buildings are sufficiently distinct from the delay and denial of the Andreas Project.

Under the continuing violation doctrine, the Ninth Circuit looks to whether a plaintiff alleges "discrete acts" that would violate the Constitution and occurred within the limitations period. RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045, 1058 (9th Cir. 2002) (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002)). A "discrete act" is not actionable if time-barred, even if it is related to timely filed alleged acts. Pouncil v. Tilton, 704 F.3d 568, 578 (9th Cir. 2012) (quoting Morgan, 536 U.S. at 113). Thus, if the delay and denial of the demolition permit and the designation of the Tahquitz Plaza Buildings as historic are "discrete acts," NDC is time-barred from recovering for those independent wrongs. Morgan, 563 U.S. at 113. As alleged, the delay and denial of the demolition permit and designation of Class 1 Historic status were independently wrongful, as Defendants had no discretion to deny the demolition permit. (FAC ¶¶ 29, 32, 60.) NDC contends it alleges its substantive due process claim on the cumulative effect of Defendants' actions concerning the Tahquitz Plaza Property as well as its actions concerning the Andreas Project. (Opp'n at 20.) But this contention appears to contradict the FAC's allegation that denial of the permit was independently arbitrary, given the City allegedly had no discretion as to its approval. (FAC ¶ 29.) The FAC further alleges that the designation as Class 1 Historic of the Tahquitz Plaza Property was wrongful and accomplished

through such arbitrary denial of the demolition permit. (Id. ¶ 37.) Thus, the FAC alleges that these actions were arbitrary and wrongful on their own, independent of conduct concerning the Andreas Project. Each independent, wrongful act "starts a new clock" for the statute of limitations. Pouncil, 704 F.3d at 583. Thus, NDC substantive due process claim stemming from Defendants' alleged actions concerning the Tahquitz Plaza Property is time-barred. However, the Court notes that this does not prevent NDC from using the other-wise time-barred acts as evidence supporting its timely substantive due process claim concerning the delay and denial of the Andreas Project. Morgan, 536 U.S. at 113.

Accordingly, NDC is not time-barred from pursuing due process claims stemming from the delay and denial of the Andreas Project and can support this claim with evidence concerning Defendants' actions regarding the Tahquitz Plaza Property. However, NDC is time-barred insofar as it roots due process claims in the delay and denial of the demolition permit and Class 1 Historic designation of the Tahquitz Plaza Buildings.

### 3. NDC's Takings Claim Subsumes its Due Process Claims

Defendants argue NDC's due process claims are subsumed by its claim under the Takings Clause. (Mot. at 14.) The Court agrees. The Takings Clause does not automatically foreclose property-related due process claims. See Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 532 (2005); Crown Point Development, Inc. v. City of Sun Valley, 506 F.3d 851, 856 (9th Cir. 2007) (the Takings Clause "does not invariably preempt a claim that land use action" may violate substantive due process). Specifically, in Lingle, the Supreme Court held "that a property owner's challenge to a regulation that does not substantially advance legitimate interests is grounded in due process, not the Takings Clause." Crown Point, 506 F.3d at 852 (discussing Lingle, 506 F.3d at 832). The Lingle Court noted that a claim under the Takings Clause contemplates the issue of compensation in the event of an otherwise proper interference that amounts to a taking. Lingle, 544 U.S. at 543. In other words, a claim under the Takings Clause "presupposes that the government has acted in pursuit of a valid public purpose." Id. However, "if a government action is found to be impermissible—for instance because it fails to meet the 'public use' requirement or is so arbitrary as to violate due process—that is the end of the inquiry. No amount of compensation can authorize such action." Id.

The key issue here is whether conduct that is alleged to be arbitrary and capricious may support a substantive due process claim separate and apart from a claim under the Takings Clause when the alleged property interference unquestionably serves a public purpose. The Ninth Circuit's interpretation of Lingle indicates that such arbitrary conduct cannot serve as an independent cause of action when a plaintiff alleges an otherwise permissible, even if not yet compensated, taking under the Fifth Amendment. Thus, the key inquiry as to whether a plaintiff may bring a substantive due process claim is whether the interference with property rights served a public purpose. That the process by which a government entity accomplished such interference was arbitrary does not change this inquiry, as a property owner is compensated for such a taking under the Fifth Amendment.

The Ninth Circuit interpreted Lingle narrowly and explained that due process claims are not preempted by a claim under the Takings Clause "to the limited extent that a claim for wholly illegitimate land use regulation is not foreclosed." Crown Point, 506 F.3d at 852-53. Thus, a claim under the Takings Clause "would preclude a due process challenge only if the alleged conduct is actually covered by the Takings Clause." Id. at 855. "To the extent a property owner's complaint falls within . . . [a] recognized application of the Takings Clause, . . . the claim must be analyzed under the Fifth Amendment whether or not it proves successful; but to the extent that the conduct alleged cannot be a taking, . . . a due process claim is not precluded." Id. at 855-56 (emphasis added). Thus, to allege a substantive due process claim concerning land use action, a plaintiff must allege that the challenged action is "wholly illegitimate" to avoid being subsumed by the Takings Clause. See Colony Cove Properties, LLC v. City of Carson, 640 F.3d 948, 960 (9th Cir. 2011) (citing Lingle 544 U.S. at 852-53). The Lingle Court identified three basic categories of regulatory action that are generally deemed a taking for Fifth Amendment purposes: (1) where the government requires an owner to suffer a permanent physical invasion of property; (2) where a regulation deprives an owner of all economically beneficial use of property; and (3) where the Penn Central factors are met. Crown Point, 506 F.3d at 856 (discussing Lingle 544 U.S. 528).

Here, Plaintiff expressly alleges that Defendants' land use actions—specifically, delay and denial of permit applications—were to perpetuate "the City's free parking rights [under the license agreement] for public use, which such continued rights the City considers vital to the profitability of the City's nearby Convention Center." (FAC ¶ 50.) In its Opposition, NDC explains that Defendants' alleged actions resulted in "the physical occupation of the Property to the exclusion of NDC for the benefit of the public at large." (Opp'n at 21 (emphasis added).) Thus, NDC unambiguously asserts Defendants' actions served a public purpose. Furthermore, Plaintiffs assert that the cumulative effect of Defendants' actions "establishes that the City does not intend to approve any economically viable development plans by NDC for the Property under any circumstances." (FAC ¶ 50; see also id. ¶ 54) Accordingly, NDC alleges conduct that falls within a "recognized application of the Takings Clause" that must be analyzed under the Fifth Amendment. See Crown Point, 506 F.3d at 855. NDC does not allege nor argue that securing use of the Property for the purpose of offering public parking near the Convention Center is an invalid purpose under the Fifth Amendment such that she can argue Defendants' conduct "cannot be a taking[.]" See id. at 855-56. Finally, the Court is unpersuaded that the steps through which Defendants accomplished the alleged taking changes this inquiry, as it would expand Lingle's application far beyond what the Ninth Circuit characterizes as the "limited extent" of permitting substantive due process claims only for "wholly illegitimate land use regulation[.]" Id., 506 F.3d at 852-53.[3] That the process through which Defendants pursued the taking was allegedly arbitrary does not affect NDC's claim for just compensation under the Fifth

---

[3] NDC further contends that it should be able to pursue its due process claims because it seeks damages beyond compensation for taking the Property. (Opp'n at 25.) NDC offers no citation to support this tail-wagging-the-dog argument.

Amendment.  Thus, NDC's claim under the Takings Clause subsumes its due process claims.[4] The Court GRANTS Defendants' Motion as to NDC's due process claims.

The Court acknowledges that this ruling suggests plaintiffs may face mutually exclusive alternatives.  For example, if a plaintiff pleads interference with its property rights for a public purpose, it alleges a taking that forecloses a due process claim.  But if a plaintiff alleges the government had no valid purpose in interfering with its property rights, it would allege a due process violation, as no amount of compensation could authorize the interfering action.  However, this ruling does not contemplate whether a plaintiff may plead a substantive due process claim and an alternative claim under the Takings Clause when the parties contest whether the interference with property rights "cannot be a taking" under the Fifth Amendment.  The Court need not consider that particular situation, as NDC clearly alleges Defendants sought to perpetuate use of the parking lot for public benefit.

### 4. Qualified Immunity for Individual Defendants

Because the Court dismisses the entire substance of Plaintiffs' claims under § 1983, the Court will not address Individual Defendants' qualified immunity arguments.

## C. Claim 1: Inverse Condemnation (NDC against the City)

Federal question jurisdiction was the sole basis for jurisdiction asserted in Defendants' Notice of Removal and Plaintiffs' FAC.  (See Notice of Removal ¶ 3; FAC.)  Because the Court dismisses Plaintiffs' federal law claims, it has discretion whether to retain supplemental jurisdiction over this remaining state law claim.  See 28 U.S.C. § 1367(c)(3).  The Court declines to exercise supplemental jurisdiction as to NDC's California inverse condemnation claim and REMANDS this claim to state court.

## V.  LEAVE TO AMEND

Generally, a "district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by allegation of other facts."  Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citation omitted).  Here, NDC acknowledges that its § 1983 claim for an unconstitutional taking cannot be ripe until its inverse condemnation claim is adjudicated, and O&M concedes its declaratory relief action must be asserted in the City's state court action.  (Opp'n at 24-25.)  Furthermore, the Court finds that Plaintiffs cannot re-allege their substantive due process claims without contradicting the allegations in their FAC that Defendants' conduct was intended to secure the Property for a public use.  Thus, any attempt to re-allege the substantive due process claim would be futile.  Accordingly, the Court DENIES LEAVE TO AMEND as to these claims.

---

[4] Because the Court finds NDC's due process claims are subsumed, it will not address whether NDC adequately alleges that Defendants violated its due process rights.

## VI. CONCLUSION

For the reasons above, the Court GRANTS-IN-PART Defendants' Motion and DISMISSES Claims 2 and 3 of Plaintiffs' First Amended Complaint. NDC's § 1983 claim for an unconstitutional taking and O&M's declaratory relief claim are DISMISSED WITHOUT LEAVE TO AMEND and WITHOUT PREJUDICE. The Court REMANDS the remaining inverse condemnation claim to the Superior Court for the County of Riverside for all further proceedings. The Clerk is directed to close the case.

**IT IS SO ORDERED.**